**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Bret William MAY, Defendant–Appellee.**

**No. 93SA79.**

Supreme Court of Colorado,
En Banc.

Oct. 18, 1993.

Robert S. Grant, Dist. Atty., Seventeenth Judicial Dist., and Michael J. Milne, Sr. Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Springer and Steinberg, P.C., Harvey A. Steinberg, Denver, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The People bring this interlocutory appeal challenging the district court's suppression of statements made by the defendant in response to questioning by a police officer. The statements were found by the district court to be the result of an involuntary waiver of the defendant's right to remain silent. According to the People, the standard by which the district court adjudged the waiver was incorrect, and the ruling lacked both a legal and factual basis. Although we find the language of the district court's ruling to be faulty, the focus of the ruling was correct and the court's conclusion is supported by the evidence. Therefore, we affirm the ruling of the district court.

## I.

In the early morning of August 16, 1992, State Trooper Thomas Medina, Jr., arrived at the scene of a serious accident. There he observed a man face down on the roadway, a single passenger car seat lying nearby. The man, who emergency personnel determined was dead, and the seat were about eighty-eight feet away from a heavily damaged car. Another man was discovered lying face up against the right rear wheel of the car, blood on his mouth. When told by the officer to remain still, the man moved his arm. Trooper Medina presumed the man was unconscious and seriously injured. Identification of the man as Bret William May was discovered by the emergency personnel treating him. May was taken by helicopter to St. Anthony's Hospital North.

Trooper Medina noted that the car was smashed from the front and rear. The passenger seat was missing, but the driver's seat was still attached. With another officer, who was an accident reconstructionist, Trooper Medina surveyed the accident scene. They measured 236 feet of yaw and skid marks crossing the road. The car then went into a ditch and travelled another 27 feet, ending up against a fence. The officers estimated that the car had been going at least twenty miles over the posted speed limit of thirty miles an hour on a winding road with restricted visibility.

State Trooper Ted Hollis also participated briefly in the investigation at the scene of the accident. He then went to the hospital to interview May and obtain blood samples from him. Hospital personnel permitted Trooper Hollis to meet with May, who was resting on a gurney with an I.V. in his arm at the time. Trooper Hollis noticed a strong alcoholic odor on May's breath, and May's eyes were watery and bloodshot. After advising May that he was under investigation for vehicular homicide and that blood samples would be taken, Trooper Hollis then asked May to answer some questions. May consented, and was then given his *Miranda*[1] warnings. When asked if he understood them, May replied that he did.

Trooper Hollis then began questioning May. May admitted to driving the car and drinking at the Twin Towers Bar earlier in the evening. Although he was unsure exactly how much he had consumed, he stated it was "enough to be drunk." He finished drinking around 10:30 or 12:30 that night. May also stated, in response to questioning, that he had been driving on Ura Road, that he was going home, that he could not remember if anyone had been in the car with him, and that he did not have any mechanical problems. May did not know what time it was, but thought it was the 20th of August. He also thought he was at the Highland Village Apartments. May stated that he had eaten at Burger King, and that he had no medical problems.

The interview lasted for ten to fifteen minutes. During this time, May appeared

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

to be drifting in and out of consciousness. He only responded to the trooper's questions, not volunteering any information, and a number of the answers he gave were inaccurate—the date, time, where he had been driving, where he was presently, and whether anyone had been with him.

May was charged on August 25 with Vehicular Homicide, a class four felony.[2] He filed a motion to suppress his statements to Trooper Hollis, claiming that due to head injuries, he had no recollection of any matters at the hospital involving Trooper Hollis. After testimony from Troopers Hollis and Medina, and from May, the district court granted the motion to suppress, finding that "[u]nder the circumstances ... the Prosecution has failed in their burden to establish a voluntary waiver of the *Miranda* right...." The People appealed the ruling to this court, arguing that the legal standard of voluntariness had been applied incorrectly. We agree with the People's contention, but affirm the suppression ruling on different grounds.

## II.

▮ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court set forth certain guidelines by which the rights of a person subjected to custodial interrogation[3] are safeguarded. Thus, before a person in custody can be interrogated, "that person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444, 86 S.Ct. at 1612.

▮ These rights may be waived, however, as long as the waiver is knowingly, intelligently, and voluntarily made. *Id.; People v. Hopkins*, 774 P.2d 849, 851 (Colo. 1989). An inquiry into the validity of any such waiver encompasses two dimensions, as set forth in *Hopkins:*

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness, both of the nature of the right being abandoned and the consequences of the decision to abandon it.

*Hopkins*, 774 P.2d at 851 (*quoting Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)). The burden is placed on the prosecution to prove the waiver by the preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *Hopkins*, 774 P.2d at 852.

▮ As a preliminary matter, we note that, in earlier cases, there was some confusion concerning the two elements of a valid waiver quoted above. Thus, a defendant's mental ability to comprehend the nature and ramifications of his or her waiver, which is now a separate element, originally was part of the voluntariness determination. *See, e.g., People v. Fordyce*, 612 P.2d 1131 (Colo.1980). This evolution of the "voluntariness" assessment into the present two-part test[4] explains why the

---

2. § 18–3–106, 8B C.R.S. (1993 Supp.).

3. We do not address the underlying issue of whether the defendant was in police custody and subject to interrogation for *Miranda* purposes at the time of the interview with Trooper Hollis. The suppression hearing transcript indicates that the prosecutor briefly attempted to raise the custody issue but quickly abandoned that line of argument without completing it. This issue was not raised on appeal, and both parties have assumed that the defendant was subjected to a custodial interrogation. The People's primary argument on appeal, that the defendant validly waived his *Miranda* rights, concedes the custodial nature of the interrogation. *See, e.g.,* the People's Opening Brief presenting

the issue for review as to whether the trial court "incorrectly conclude[d] that the defendant did not knowingly and voluntarily waive his *Miranda* rights and therefore, erroneously suppress[ed] his statements from use at trial...." Therefore, we will assume for purposes of this appeal that the defendant was in fact in custody at the time of the interrogation.

4. This two-part test for determining the validity of an alleged waiver of one's Fifth Amendment rights under *Miranda* must be distinguished from the one-part test for determining whether an inculpatory statement was made voluntarily for purposes of the due process clause of the Fourteenth Amendment. When *Miranda* rights

district court did not articulate correctly the elements of a valid waiver when it relied on *Fordyce.* To determine the validity of a waiver, a court must address the two separate dimensions of voluntariness: first is the presence or absence of coercion, which primarily concerns the effect of police conduct, and second is the knowing and intelligent action on the part of the person being interrogated.

■ The People correctly point out that a waiver of *Miranda* rights resulting in a confession or inculpatory statement is considered to be involuntary only if coercive governmental conduct—whether physical or psychological—played a significant role in inducing the defendant to make the confession or statement. *See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *People v. Gennings,* 808 P.2d 839 (Colo.1991). Here, the defendant does not claim that the police, in any manner, acted inappropriately; there are no allegations of police misconduct in the interview of May at the hospital.[5] The People, however, have neglected the second prong of the waiver test in their argument. That is, was the defendant fully aware of the nature of the right to remain silent that he was abandoning and the consequences of abandoning that right? In other words, since May was subjected to a custodial interrogation, we must determine if May's waiver of his *Miranda* rights was knowing and intelligent. *See Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857–58, 93 L.Ed.2d 954 (1987); *Moran,* 475 U.S. at 421, 106 S.Ct. at 1140–41; *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

■ The validity of May's waiver must be examined under the totality of the circumstances surrounding the custodial interrogation. *Hopkins,* 774 P.2d at 852. The district court made the following findings based on the totality of the circumstances:

[t]he defendant was involved in an accident. When the original Trooper arrived at the scene ... the defendant was unconscious. He was taken from that scene on Flight For Life to Saint Anthony's Hospital; that he was undergoing treatment at Saint Anthony's Hospital; that he was then contacted by another trooper, advised of his rights; at the time that he was going in and out of sleep; that any—in answers to questions, the defendant didn't know what day it was. Didn't know what road the accident was on. Didn't remember if anyone was in the car, and thought that he was in an apartment in Highland Village.

These findings clearly establish that the district court focused its inquiry on May's ability to comprehend the situation—whether he could knowingly and intelligently waive his *Miranda* rights—rather than on any incidence of police misconduct. The district court determined that May, as a result of his traumatic experiences and as evidenced by his confused answers to the officer's questions, was not cognizant of his surroundings or the events then taking place. Although the district court set forth its ruling in terms of voluntariness, May's ability to comprehend what was happening was the primary factor in the district court's determination that the waiver was not valid.

■ The district court conducted its waiver assessment and expressed the basis

---

attach, *i.e.,* when the person is subjected to a custodial interrogation, the inquiry is not only whether or not the waiver was made voluntarily, but also whether the waiver was made knowingly and intelligently.

5. We address the issues raised by the parties only; however, we are not unmindful of the Fourteenth Amendment due process concerns attendant to noncustodial or other statements. Here May does not allege the existence of "police overreaching" or that the police exploited a physical or mental weakness of his, which

would require that we determine whether May's purported confession was given voluntarily. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). For purposes of determining the voluntariness of a defendant's confession, both the conduct of the police and the condition of the defendant at the time the confession was made must be examined. *See, e.g. Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Jackson v. Denno,* 378 U.S. 368, 377, 84 S.Ct. 1774, 1781, 12 L.Ed.2d 908 (1964); *Reck v. Pate,* 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961).

of its ruling in the same manner as was done in *Fordyce*, 612 P.2d 1131. In that case, we affirmed the suppression of a custodial statement made by a woman while in intensive care. Although the woman waived her *Miranda* rights and, furthermore, "appeared to be oriented as to person, time and place", *id.* at 1133, the trial court found determinative the expert witness testimony that the woman was actually suffering from morphine intoxication at the time. The fact that the police officers were unaware of her intoxication was not dispositive.[6] The trial court found that the woman was unable to understand the consequences of making her statement (which is the present "knowing and intelligent" prong) and, therefore, her waiver was not voluntary. *Id.* at 1134. We affirmed that determination, but have since refined the waiver test to encompass the two dimensions discussed above.

We decline to remand this case for further findings because of a mere technical error on the part of the district court. A close examination of the ruling reveals that although the language used in the ruling (i.e. "voluntary") is incorrect, the district court did conduct the proper assessment of the validity of the waiver by focusing on the "knowing and intelligent" aspect of the test. The district court essentially determined that May was unable to comprehend the waiver that he gave, and, thus, his waiver was invalid. We defer to the trial court's finding as supported by the record. *See People v. McIntyre*, 789 P.2d 1108 (Colo.1990). The ruling of the trial court is affirmed.

ERICKSON, J., concurs in the result only.

VOLLACK, J., dissents.

ROVIRA, C.J., does not participate.

**6.** The People argue that the defendant May was coherent and aware when he gave the waiver, thus rendering it valid, and his subsequent confusion and incoherence during the questioning should not taint the prior validity. We are not persuaded. The circumstances as a whole—the injuries, the fact that the entire period of ques-

Justice ERICKSON concurring in the result only:

I concur in the result only. The district court applied the wrong test, but correctly suppressed the statements given by the defendant at the hospital. I dissent to the majority's application of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to the facts of this case.

I

I agree in part with Justice Vollack's dissent. *Miranda* is not applicable because the questioning of May by the uniformed police officer did not rise to the level of custodial interrogation. *Miranda* requires a warning be given before interrogation commences when an accused "is taken into custody or otherwise deprived of his freedom ... in any significant way." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630. The determination of whether the interrogation is custodial is objective. *People v. Viduya*, 703 P.2d 1281, 1286 (Colo.1985) (assessing whether a reasonable person in the position of the accused would believe himself deprived of his freedom of action in any significant way). Many factors may be relevant in assessing whether the defendant is in formal custody, including the time, place and manner of the questioning. *People v. Thiret*, 685 P.2d 193, 203 (Colo. 1984). We have previously held that a police officer questioning a patient in a hospital does not in all circumstances constitute custodial interrogation. *People v. Milhollin*, 751 P.2d 43, 52 (Colo.1988).

There is no evidence in the record to support the conclusion that May reasonably believed his freedom of action was restricted to a level sufficient to establish that he was in custody. The police officers's questions were similar to a routine traffic investigation conducted at the scene of an accident. The questions were direct and May was not physically restrained by the offi-

tioning from the waiver to the end lasted only ten to fifteen minutes, the jumbled and incorrect answers—indicate that May was not sufficiently aware at the time of the waiver. Under *Fordyce*, the officer's belief that May was aware is not dispositive.

cer. The fact that May was in the hospital and could not leave, rather than at the scene of the accident, was a result of May's physical condition and not that of law enforcement authorities. After he answered the questions asked by the investigating officer May was placed under arrest for vehicular homicide.

I agree with Justice Vollack's dissent and conclusion that this case involved a non-custodial traffic investigation which does not require a *Miranda* analysis.

## II

I agree with the majority and the trial court's conclusion that May's statements were involuntary and should be suppressed. Although the trial court erred in applying a *Miranda* analysis and erred in relying on the standard enunciated in *People v. Fordyce*, 612 P.2d 1131 (Colo.1980), the trial court nevertheless found that the statement was involuntary and ordered suppression of the statement.

Inculpatory statements to the police must be voluntary to be admissible as evidence against an accused at trial. *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964); *People v. Jensen*, 747 P.2d 1247, 1251–52 (Colo.1987); *People v. Rhodes*, 729 P.2d 982, 984 (Colo. 1986); *People v. Freeman*, 668 P.2d 1371, 1378 (Colo.1983). If a defendant claims that the statements were involuntary, the prosecution must prove the voluntary nature of the statements by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 484, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972); *People v. Raffaelli*, 647 P.2d 230, 235 (Colo.1982). The mental condition of the accused at the time the statement was made is relevant to the determination of whether the statement was voluntary. *Raffaelli*, 647 P.2d at 235; *People v. Parks*, 195 Colo. 344, 347, 579 P.2d 76, 77 (1978). Coercive police activity is a "necessary predicate to the finding that [inculpatory statements are] not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v.*

*Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *see also People v. Gennings,* 808 P.2d 839, 843 (Colo.1991).

If a statement is a product of a rational intellect and a free will, then it is voluntary. *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) (quoting *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 280–81, 4 L.Ed.2d 242 (1960)); *Rhodes,* 729 P.2d at 984. The trial court must consider the totality of the circumstances surrounding the statement in determining whether it was made voluntarily. *Rhodes,* 729 P.2d at 984; *Freeman,* 668 P.2d at 1387; *Raffaelli,* 647 P.2d at 235. Whether inculpatory statements are voluntary is primarily a factual question for the trial court and the trial court's factual findings will not be disturbed on review unless there has been an abuse of discretion. *Jensen,* 747 P.2d at 1252–53; *Downey v. People,* 121 Colo. 307, 317, 215 P.2d 892, 897 (1950).[1]

The record contains sufficient evidence to uphold the trial court's determination that, under the totality of the circumstances, May's statements were involuntary and were not the product of a rational intellect and a free will. The record indicates that May did not comprehend what was occurring when he made the statements. The district court judge found that:

> When the original trooper arrived at the scene, the defendant was unconscious.... [May] was then contacted by another trooper, advised of his rights; at the time that was going in and out of sleep; that any—in answers to questions, the defendant didn't know what day it was. Didn't know what road the accident was on. Didn't remember if anyone was in the car, and thought that he was in an apartment in Highland Village.

Although this is not conclusive proof that the statements were involuntary, it is evidence that supports the trial court's finding that May lacked the rational intellect to give a voluntary statement. The fact that a uniformed police officer was at the hospi-

---

1. The trial court is required to make detailed and clear findings to permit meaningful appel-
late review. *People v. McIntyre,* 789 P.2d 1108, 1110 (Colo.1990).

tal asking questions and advising May of his *Miranda* rights while May was incoherent was, in my view, inappropriate and coercive.

### III

Accordingly, I concur in the result. I agree with the trial court and the majority that the statements made by the accused in the hospital must be suppressed. However, Justice Vollack's dissent is correct in the conclusion that *Miranda* is not at issue in this case because there was no custodial interrogation.

### Justice VOLLACK dissenting:

The majority holds that the trial court's suppression of the defendant's inculpatory statements is appropriate because the defendant was not fully aware of the nature of his *Miranda* [1] right to remain silent and the consequences of abandoning the right. Maj. op. at 883. I disagree with the majority's conclusion. First, under the facts of this case, a Fifth Amendment *Miranda* analysis is not necessary. The defendant at the time of questioning was not in police custody or otherwise deprived of his freedom by the authorities in any significant way. *See Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Second, even if the validity of a *Miranda* waiver were at issue, there has been no showing of police coercion. Absent coercion, the defendant's statements are admissible. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). For these two reasons, I dissent.

### I.

The standard to be applied in cases involving waiver of *Miranda* rights and admissibility of statements requires a two-part analysis. First, the court must ascertain whether the defendant was in custody when he made the statement. If custody is

established, the next step is to analyze whether the waiver is valid. The trial court failed to apply the correct legal standard by not first resolving the custody question. *See, e.g., People v. Viduya*, 703 P.2d 1281 (Colo.1985).[2] In my opinion, the hospital setting and the police interview involving an investigation of a traffic accident do not rise to the level of a custodial interrogation.

*Miranda* warnings must be given when a person "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630. It is well settled in Colorado, however, that questioning by police of a patient in a hospital setting, in itself, does not amount to custodial interrogation. *People v. Milhollin*, 751 P.2d 43 (Colo. 1988); *see People v. DeBoer*, 829 P.2d 447, 448 (Colo.App.1991) ("[C]onfinement to a hospital bed is insufficient alone to establish custody."); *see also People v. DeBaca*, 736 P.2d 25 (Colo.1987).

When questioned, defendant May was in the hospital being treated for injuries sustained in an automobile accident. Although the police officer informed him of his *Miranda* rights before the questioning began, May was not placed under arrest or in any other form of police custody. The majority, as well as the trial court, presuppose that because May received *Miranda* warnings he was necessarily in police custody. He was not. That the officer was overly cautious about *Miranda* rights does not entitle May to the additional protections triggered by being in police custody.

The question of whether May was in custody is an objective one, and depends on whether a reasonable person in his position would believe himself to be deprived of his freedom of action in a significant way. *People v. Viduya*, 703 P.2d 1281, 1286 (Colo.1985); *see also Miranda*, 384 U.S. at

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. While a trial court's findings of fact are entitled to deference by a reviewing court, a trial

court is obliged to apply the correct legal standard. *See People v. Quezada*, 731 P.2d 730, 732–33 (Colo.1987); *People v. Gennings*, 808 P.2d 839, 844 (Colo.1991).

478, 86 S.Ct. at 1630. Relevant factors in making such an assessment include:

> the time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Thiret*, 685 P.2d 193, 203 (Colo. 1984). The hearing record supports the conclusion that May was not in custody at the time he made the statement to the police officer. According to testimony, the entire interview did not last more than ten or fifteen minutes, during which May was lying down but was not physically restrained. He understood he was speaking with a police officer and said he was willing to answer questions. The questions were routine and direct, and dealt with whether May had been driving the car and how much he had had to drink. It was only after the interview was completed that the officer informed May he was under arrest for vehicular homicide.

Like *Milhollin*, this police interview at the hospital was a general investigation of a traffic accident. It was no different than if the officer had asked the questions at the scene of the accident. *See Miranda*, 384 U.S. at 477–78, 86 S.Ct. at 1629 ("General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."). The mere fact that the interview took place, by necessity, at the hospital rather than at the scene "does not transform a general fact-finding question relating to a traffic investigation into a custodial setting." *Milhollin*, 751 P.2d at 51.

Non-custodial questioning related to a traffic investigation does not warrant a *Miranda* analysis. The voluntary statements made by the defendant are admissible in evidence.

## II.

The majority assumes that the defendant was in custody and concludes that his *Miranda* waiver was invalid because he did not understand his rights and the implications of abandoning them. Even if May had been in custody, however, his statements to the police officer would be admissible because they were given voluntarily. Under *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Id.* at 170, 107 S.Ct. at 523. Coercive police activity, therefore, "is a necessary predicate to the finding that a confession is not 'voluntary.'" *Id.* at 167, 107 S.Ct. at 522. The officer's routine questioning of May in the hospital was not coercive. Because this necessary predicate is not satisfied, the inquiry must end here.[3] The statements are admissible and subject to a weight and credibility determination by the finder of fact.

The voluntariness assessment depends on the totality of the circumstances surrounding the interview. *See, e.g., People v. Hopkins*, 774 P.2d 849, 852 (Colo.1989); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). However, a defendant's statement is deemed voluntary if there is no police coercion or overreaching. "The voluntariness of a waiver of [the Fifth Amendment] privilege has always depended on the absence of police overreaching, not on 'free

---

**3.** This case evaluates the defendant's waiver of his Fifth Amendment *Miranda* rights and does not apply an analysis of the Fourteenth Amendment Due Process voluntariness standard. A finding of police coercion is a necessary predicate in either analysis, however, to reach a finding that a statement was involuntary. *See Colo-rado v. Connelly*, 479 U.S. 157, 169–70, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986) ("There is obviously no reason to require more in the way of a 'voluntariness' inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context.")

choice' in any broader sense of the word." *Connelly,* 479 U.S. at 170, 107 S.Ct. at 523. The relevant test, considering the totality of the circumstances, focuses not on the defendant's free will, as it did before *Connelly,* but rather on the presence or absence of police coercion.[4]

Although the majority declines to address the issue, maj. op. at 883, May's statements to the police did not come about as the result of police overreaching. Nor did the police play a significant role in inducing the statements. *See People v. Gennings,* 808 P.2d 839, 846 (Colo.1991) ("[C]ritical to any finding of involuntariness is the existence of coercive governmental conduct ... that plays a significant role in inducing a confession or inculpatory statement."). The officer's questioning of May was the "but-for" cause of the statements; however, for a Fifth Amendment violation to occur, there must be a showing of police action more outrageous than a short, non-adversarial routine interview. "Even where there is causal connection between police misconduct and a defendant's confession, it does not automatically follow that there has been a violation...." *Connelly,* 479 U.S. at 164 n. 2, 107 S.Ct. at 520 n. 2.

A defendant's mental state may be a factor in the voluntariness calculation. Police exploitation of a defendant's weakened mental condition through psychological persuasion may justify a finding that a confession was forced from a suspect against his will. *See, e.g., Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Greenwald v. Wisconsin,* 390 U.S. 519, 88

4. The majority applies the two-part voluntariness test set forth in *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), and cited in *People v. Hopkins,* 774 P.2d 849 (Colo. 1989). This two-part inquiry examines first whether there is evidence of police coercion, and second whether the defendant was fully aware of his Fifth Amendment rights and the implication of their waiver. The majority, however, unnecessarily moves to the second half of the test after an examination of the first half established that there was no police coercion. *Burbine* was decided before *Connelly.* When *Connelly* is applied to the earlier tests of voluntariness, the inquiry must end after it is determined there is no coercion.

S.Ct. 1152, 20 L.Ed.2d 77 (1968). But even in these cases, there must be a showing of governmental misconduct. A "defendant's mental condition, by itself and apart from its relation to official coercion, should [never] dispose of the inquiry into constitutional 'voluntariness.'" *Connelly,* 479 U.S. at 164, 107 S.Ct. at 520. There must be an element of overreaching or of inappropriate behavior.

A ten- to fifteen-minute routine investigatory interview in a hospital is not overreaching. This case does not involve the police overbearing the defendant's will, like *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), where police interrogated a suspect in the intensive care unit for four hours while the suspect repeatedly asked for a lawyer and for the questioning to stop. Here, the officer did nothing legally prohibited or otherwise improper.

There is little or no information in the record about the defendant's mental condition at the time he was questioned by police. The hearing transcript reveals that the trial court examined whether the defendant was cognizant of his surroundings. The trial court decided that he was not, basing its conclusion on the testimony of one witness, the investigating officer. Although the officer testified that the defendant was conscious and coherent at the time of the interview, the court grounded its decision on the fact that the defendant had just been in an automobile accident, had been unconscious at the scene of the accident some hours before the interview, closed his eyes during pauses between his

Although the majority implies otherwise, the *Burbine/Hopkins* test is not firmly entrenched in the post-*Connelly* jurisprudence of this court. While *Hopkins* suggests we examine both prongs of the test, for example, the reasoning of other cases follows the strict *Connelly* analysis outlined above. *See, e.g., People v. Gennings,* 808 P.2d 839 (Colo.1991); *People v. DeBaca,* 736 P.2d 25, 28 (Colo.1987) (Rovira, J., specially concurring) (As expressly noted in Justice Rovira's special concurrence: "Here, there was absolutely no evidence that the defendant's statements were induced by police misconduct; therefore, the defendant's mental condition is not relevant.").

answers and the officer's next question, and answered incorrectly the questions of what date it was, his location, and the road on which he had been travelling. The record does not indicate whether the defendant was drugged or under the influence of any medication.[5] No hospital personnel testified at the hearing and none of May's hospital records were produced.[6] The existing trial court record, by itself, does not establish that there was governmental coercion or that May's will was overborne by the police.

The majority notes that the trial court incorrectly focused its inquiry solely on the defendant's awareness of his *Miranda* rights and neglected the foundational question of police coercion. Maj. op. at 883–884. Nevertheless, the majority affirms the trial court's decision to suppress the defendant's statements because it agreed that the defendant was not aware of his *Miranda* rights and the consequences of waiving them. Maj. op. at 884. Even if the majority's standard is applied, however, the conclusion of the trial court is not supported by the record because of the lack of direct evidence on the defendant's mental state.

The absence of police coercion and the short, non-confrontational interview, coupled with the inadequacy of evidence on the defendant's mental condition, compel the conclusion that his statements were voluntary.

### III.

The defendant's statements were made voluntarily and without coercion. They are admissible. A voluntary statement may be unreliable, but the issue is one of credibility to be decided by a jury, not one of admissibility. Such a statement "might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary

laws of the forum." *Connelly*, 479 U.S. at 167, 107 S.Ct. at 521–22.

### IV.

For the foregoing reasons, I dissent.

---

5. Although the officer testified that May was receiving intravenous fluids when questioned, the record is not clear what the fluids contained.

6. Contrast this case with *People v. Fordyce*, 612 P.2d 1131 (Colo.1980), on which the majority

relies. There, the record not only included evidence of the defendant's medical records, but also testimony by her treating physician and by an expert toxicologist, who explained the effects of morphine intoxication to the court.