**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Roel JIMINEZ, Defendant–Appellee.**

**No. 93SA157.**

Supreme Court of Colorado, En Banc.

Dec. 13, 1993.

---

A.M. Dominguez, Jr., Dist. Atty., Rebecca Brunswig, Deputy Dist. Atty., Greeley, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Michael Zwiebel, Deputy State Public Defender, Greeley, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

In this interlocutory appeal under C.A.R. 4.1, the prosecution seeks reversal of an order of the Weld County District Court granting the motion of the defendant, Roel Jiminez, to suppress statements made by him during a custodial interrogation by sheriff's officers. The court based its ruling on the determination that the defendant did not knowingly and intelligently waive his *Miranda*[1] rights prior to interrogation. Because the record supports the district court's ruling, we affirm.

## I.

The defendant was charged with second degree assault on the elderly, §§ 18–3–203 and 18–3–209, 8B C.R.S. (1986), based on an incident that occurred on October 3, 1992, in which he allegedly struck an elderly woman with a concrete block. He was apprehended ten days later and was interrogated at the Weld County Jail. The statements made in the course of that interrogation are the subject of the district court's order of suppression, which is challenged in this appeal.

A summary of the manner in which the interview proceeded, as developed by the evidence and the district court's rulings, will assist in an understanding of the issues involved in this case. Deputy Sheriff Thomas R. Johnston conducted the questioning. He testified that he gave the defendant the option of talking in either English or Spanish. Although the defendant is a Kickapoo Indian and his native language is Kickapoo, the deputy did not offer to translate into that language because of the unavailability of an interpreter. When the defendant selected Spanish, Deputy Johnston asked Deputy Sheriff Amelia Richards, who speaks both English and Spanish, to assist as an interpreter. Richards read the defendant his *Miranda* rights in Spanish from a pre-printed form. She added explanations in her own words in an effort to make sure the defendant understood. The defendant indicated that he did understand, signed the written waiver of his rights, and agreed to talk to the deputies. Thereafter, he made the incriminating statements that he later moved to suppress.

At trial, the defendant presented the testimony of Dr. Suzanne Bernhard, a psychologist, who had examined the defendant initially to determine his competency. As the district court summarized her testimony,

[S]he said that defendant functions at about the 6 year old level. He has never been to school and has a very limited vocabulary, even in his native Kickapoo. He understands some English and some Spanish. He is extremely concrete in his thinking and does not understand concepts, such as "rights". He did not understand terms such as "lawyer" and "jury". She indicated that she thought he had the ability to learn enough about "lawyer", "district attorney", "public defender", "jury", etc. to be able to participate in a trial. She testified that even at the time of the hearing, after having spoken through a Kickapoo interpreter, defendant did not understand the concept of "Rights".

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Dr. Bernhard's testimony was reinforced in some particulars by Professor Alfonso Rodriguez, an expert in Spanish language and culture, whose first language is Spanish and who testified on behalf of the defendant. Professor Rodriguez had listened to the tape recording of the interrogation of the defendant. After first discounting the effect of grammatical errors to which Professor Rodriguez testified, the district court summarized his testimony as follows:

> [H]e testified that the *Miranda* portion of the interview was spoken very fast. Parenthetically I note that most of us tend to speak faster when we are reading something outloud. He testified (and common experience would also tell me) that when someone does not understand a language very well that it is more difficult to understand when the language is spoken quickly. He drew a clear distinction between the first part of the interview, the *Miranda* warnings, and the subsequent portion. He concluded that there was little understanding of the first part, both because of the language problem and because of the abstract concepts contained in the *Miranda* warnings. In the later portion of the interview, the subject was more concrete and the defendant evidenced more understanding.

The court went on to reject the defendant's arguments that his statements were involuntary[2] and that they were based on an illegal arrest. The court predicated its suppression ruling entirely on the absence of a knowing and intelligent waiver of the defendant's *Miranda* rights.

The prosecution moved for reconsideration of the ruling, contending in part that in absence of police coercion, suppression is improper. The district court rejected this argument, holding that in order to be admissible a defendant's statements made in the course of custodial interrogation must not only be voluntary but must be based on a knowing and intelligent waiver of *Miranda* rights. The court identified the issue precisely: "The issue in the instant case is whether the defendant's waiver was knowing and intelligent." After making findings concerning the defendant's inability to understand his *Miranda* rights, and stating that "[o]ne cannot waive what he cannot understand," the court summarized its ruling:

> I find the defendant was fully advised of his Miranda rights. He said he understood those rights and he waived his rights. There was no police coercion or misconduct. Nevertheless, I find that defendant did not in fact understand his rights, because he did not, at least at that time, have the capacity to understand.

The prosecution appealed. Because the district court applied the correct legal standards to findings of fact supported by the evidence, we affirm.

II.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court established procedural safeguards to protect the Fifth Amendment privilege against self incrimination held by persons subjected to interrogation while in police custody. *Id.* at 467, 478, 86 S.Ct. at 1624, 1630. In recognition of the "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," *id.* at 467, 86 S.Ct. at 1624, a person subjected to such questioning must first be given certain warnings. *Id.* at 479, 86 S.Ct. at 1630.

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used

---

**2.** The district court found "the statements to have been freeley [sic] and voluntarily given, without promises, inducements or threats," and therefore ruled they would be admissible for impeachment purposes. *See Michigan v. Harvey*, 494 U.S. 344, 351, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990); *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971) (privilege to testify in one's defense cannot be construed to include the right to commit perjury); *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id. See also Oregon v. Elstad*, 470 U.S. 298, 307, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985) (statements taken in violation of *Miranda*, although voluntary, must be excluded from evidence in the prosecution's case). A person so advised may waive these rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *accord Colorado v. Spring*, 479 U.S. 564, 572, 107 S.Ct. 851, 856, 93 L.Ed.2d 954 (1987); *People v. May*, 859 P.2d 879, 882 (Colo.1993); *People v. Hopkins*, 774 P.2d 849, 851 (Colo.1989). "But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630. The prosecution has the burden of proving waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *Hopkins*, 774 P.2d at 853; *People v. Sandoval*, 736 P.2d 1201, 1204 (Colo.1987).

■ The determination of whether a waiver is voluntary, knowing, and intelligent requires two distinct inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness, both of the nature of the right being abandoned and the consequences of the decision to abandon it.

*Spring*, 479 U.S. at 573, 107 S.Ct. at 857; *May*, 859 P.2d at 882 (quoting *Hopkins*, 774 P.2d at 851 (in turn quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986))). The issue of voluntariness addresses the "presence or absence of coercion which primarily con-

cerns the effect of police conduct." *May*, 859 P.2d at 882–83. Additional to and distinct from that issue is the issue of whether the waiver was the product of knowing and intelligent action on the part of the person being interrogated. *Id.* at 883.

■ A waiver of *Miranda* rights is involuntary "only if coercive governmental conduct—whether physical or psychological—played a significant role in inducing the defendant to make the confession or statement." *May*, 859 P.2d at 883. A waiver, however, may be voluntary but still fail to satisfy the requirement that it also be knowing and intelligent. The latter requirement is met only if the person waiving the privilege was "fully aware of the nature of the right to remain silent that he was abandoning and the consequences of abandoning that right." *Id.; accord Spring*, 479 U.S. at 574, 107 S.Ct. at 857; *Patterson v. Illinois*, 487 U.S. 285, 292, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988); *Burbine,* 475 U.S. at 421, 106 S.Ct. at 1140; *People v. Dist. Ct. In and For First Judicial Dist., Jefferson County, Colo.*, 785 P.2d 141, 145 (Colo.1990).

■ In the present case, the district court expressly found that the defendant's statements were voluntary and implicitly found that the waiver of *Miranda* rights was voluntary as well.[3] The correctness of those rulings is not before us. The court correctly recognized, however, that a separate inquiry is necessary to determine whether the waiver was knowing and intelligent. This inquiry, as with the inquiry concerning the voluntariness of the waiver, requires consideration of the totality of the circumstances surrounding the custodial interrogation. *May*, 859 P.2d at 883; *Hopkins*, 774 P.2d at 852.

The district court, in ruling on the prosecution's motion for reconsideration of the suppression order, made the following findings and observations concerning this issue:

---

**3.** The issues of voluntariness of a statement and voluntariness of the waiver of *Miranda* rights that preceded the statement are analytically dis-

tinct although factually related. *See People v. May*, 859 P.2d 879, 883 n. 5 (Colo.1993).

Defendant in this case has no formal education. His native language, kickapoo [sic], does not have words for concepts such as "rights". He has a very limited vocabulary in Spanish and in English. My findings based on the testimony of Dr. Bernhard and Professor Rodriguez was [sic] that defendant did not understand, at the time of his statement, his right to remain silent or his right to an attorney.

The court said in summary:

[D]efendant did not in fact understand his rights, because he did not, at least at that time, have the capacity to understand. It may be that he can be educated and that by the time of trial, perhaps even now, he has gained some insight. Given his circumstances at the time, I don't think, no matter how they tried that the officers could have made him understand.

 The trial court's findings of fact, when supported by competent evidence, as they are here, are binding on this court. *People v. LaFrankie*, 858 P.2d 702, 706 (Colo.1993); *People v. Horn*, 790 P.2d 816, 818 (Colo.1990); *People v. Trujillo*, 784 P.2d 788, 792 (Colo.1990); *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987). Applying correct principles of law, the court determined based on those facts that the defendant's waiver of his *Miranda* rights was not knowing and intelligent. Accordingly, the trial court's ruling must be upheld. *Horn*, 790 P.2d at 818.

### III.

While appearing to acknowledge at some points in its briefs that a waiver of *Miranda* rights must be knowing and intelligent as well as voluntary, the prosecution asserts at others that "in absence of governmental misconduct, no evidence should be excluded." In making that assertion the prosecution relies on *Colorado v. Connelly*, 479 U.S. 157, 107 ˆS.Ct. 515, 93 L.Ed.2d 473 (1986). Such an interpretation suggests that a waiver need not be knowing and intelligent but only need be voluntary in the sense of being uncoerced. We reject this reading of *Connelly*.

In *People v. Connelly*, 702 P.2d 722 (Colo.1985), later reversed by the United States Supreme Court in *Connelly*, we considered the admissibility of statements made by a defendant in police custody in response to interrogation and after advisement of *Miranda* rights. The trial court found that the defendant did not exercise free will in speaking to the police but rather was compelled by mental illness to make the incriminating statements. As a result, the trial court held that the statements were involuntary and that based upon the defendant's mental state, he did not voluntarily waive his *Miranda* rights. The trial court suppressed the statements. On appeal, we affirmed, noting that the testimony of an expert witness established that on the relevant date the defendant "was incapable of making an intelligent and free decision with respect to his constitutional right of silence while in custody and his constitutional right to confer with a lawyer before talking to the police." *Id.* at 729.

The United States Supreme Court granted certiorari and reversed our holding that the defendant did not effectively waive his *Miranda* rights. Although noting that our decision could be read to invalidate the *Miranda* waiver on broader grounds, *Connelly*, 479 U.S. at 171 n. 4, 107 S.Ct. at 524 n. 4, the Court construed our opinion as holding the waiver of *Miranda* rights ineffective because it was involuntary. The Supreme Court held that we erred in relying upon pressures not emanating from a governmental source—i.e., the defendant's mental condition—in evaluating voluntariness. Accordingly, the Court reversed the determination that the waiver of *Miranda* rights was ineffective. 479 U.S. at 169–71, 107 S.Ct. at 523–24.

There is no suggestion in *Connelly* that, as the prosecution implies, the Court intended to overrule the knowing and intelligent prong of the waiver requirement expressly recognized in *Burbine*. Quite the contrary. Footnote 4 reveals that the Court recognized that our *Miranda* rights waiver decision could be read more broadly than simply as a determination of involun-

tariness of waiver—presumably to be based as well on absence of knowing and intelligent waiver. Specifically, the Court said:

It is possible to read the opinion of the Supreme Court of Colorado as finding respondent's *Miranda* waiver invalid on other grounds. Even if that is the case, however, we nonetheless reverse the judgment in its entirety because of our belief that the Supreme Court of Colorado's analysis was influenced by its mistaken view of "voluntariness" in the constitutional sense. Reconsideration of other issues, not inconsistent with our opinion, is of course open to the Supreme Court of Colorado on remand.

*Connelly*, 479 U.S. at 171 n. 4, 107 S.Ct. at 524 n. 4. Thus, *Connelly* addresses only the "voluntary" part of the two part inquiry, and the statements made in its discussion of the waiver of *Miranda* rights must be understood as so limited.

Cases both prior and subsequent to *Connelly* have enunciated the dual requirements for waiver of *Miranda* rights. "The inquiry has two distinct dimensions." *Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141 (citing *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981), and *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977)).

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*Burbine* 475 U.S. at 421, 106 S.Ct. at 1140] (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 [99 S.Ct. 2560, 2572, 61 L.Ed.2d 197] (1979)).

*Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). *Spring*, decided three months after *Connelly*, decisively refutes the prosecution's suggestion that *Connelly* eliminates the "knowing and intelligent" prong of the test for waiver of *Miranda* rights. In upholding the sufficiency of the *Miranda* waiver at issue in *Spring*, the Court separately addressed the voluntariness requirement and the knowing and intelligent requirement. *Spring*, 479 U.S. at 573–75, 107 S.Ct. at 857–58.

We do not read *Connelly* as inconsistent in any way with the requirements of *Burbine* and *Spring* that a waiver of *Miranda* rights, in order to be effective, must be not only voluntary but also knowing and intelligent. It is the latter prong of this two part test that the district court found wanting in the present case, and the record supports that finding.

Ruling affirmed.

Chief Justice ROVIRA dissenting:

The majority affirms the trial court's suppression of a confession made by defendant. Because the police did not violate defendant's Fifth Amendment rights, I see no valid purpose in excluding defendant's confession.

I

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has set forth procedural safeguards to protect the Fifth Amendment privilege against self incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The Court also has acknowledged that "[t]he *sole concern* of the Fifth Amendment, on which *Miranda* was based, is governmental coercion," *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (emphasis added), and that *Miranda* goes no further than protecting defendants from relinquishing Fifth Amendment rights in the face of governmental coercion. *Id.*

Here, the trial court found that defendant's confession was voluntary and was not a product of police misconduct, coercion or abuse. Though the trial court stated defendant did not have the "capacity" to make a knowing and intelligent waiver, there was no finding that defendant was legally incompetent or mentally ill.[1] Further, the trial court found defendant was properly advised of his *Miranda* rights, that these rights were explained to him, that he indicated he understood the rights and that he waived his rights. Finally, defendant never gave any indication he did not understand the rights of which he was advised, he never asked the police officer to repeat or explain a word or sentence, and he never indicated a desire to terminate the questioning. To my knowledge, neither the Fifth Amendment nor *Miranda* requires a police officer in the field to look into the mind of a suspect to ascertain his level of understanding of abstract concepts.

Based upon these facts, I would find that the requirements of *Miranda* have been discharged, that there was no violation of defendant's Fifth Amendment privilege against self incrimination and that the exclusion of defendant's confession serves no purpose other than interfering with the truth-finding function of the criminal justice system.

## II

"Jurists and scholars uniformly have recognized that the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence." *United States v. Janis*, 428 U.S. 433, 448–49, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976). While the exclusion of evidence is sanctioned to deter and remedy against the abuse of constitutional rights, *People v. Kleber*, 859 P.2d 1361, 883 (Colo.1993) (Rovira, C.J., dissenting), where there is no constitutional violation the deterrent objective of the exclusionary rule is not realized.

*See Connelly*, 479 U.S. at 166, 107 S.Ct. at 521. The Supreme Court further has cautioned against the expansion of the rule when its use would not fulfill its mandate. *See Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972). Finally, the exclusionary rule was not developed to exclude evidence obtained as a result of *reasonable* police action. *See United States v. Leon*, 468 U.S. 897, 919, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984) (exclusionary rule should not be applied to deter objectively reasonable police activity).

There is no doubt that "the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence," *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986), and that the exclusion of relevant and probative evidence obstructs a criminal trial from this basic purpose. *See Connelly*, 479 U.S. at 166, 107 S.Ct. at 521; *Twomey*, 404 U.S. at 489, 92 S.Ct. at 626.

Here, the trial court found that the police officer who gave defendant his *Miranda* advisement "went out of her way to try to make sure the defendant understood" his *Miranda* rights and "[t]here was probably nothing the deputies could do in this case to make the defendant understand." If the police in this case had questioned defendant in the absence of a *Miranda* advisement, and thus, violated defendant's privilege against self incrimination the resulting confession would be properly excluded, and the exclusion presumably would have some deterrent affect on future police conduct. However, it is undisputed that the police in this case scrupulously honored the requirements of *Miranda* and communicated the advisement to defendant in the language of defendant's choice and obtained an oral and written waiver from defendant; nonetheless, the majority would exclude the evidence as if there had been some constitutional violation. The end result is to penalize reasonable police action in the absence of any constitutional violation which is con-

---

**1.** The trial court stated "I believe her [the psychologist's] opinion was that he was legally competent."

**988**

trary to the rationale of the exclusionary rule. Justice White has commented upon this illogical result:

> [E]xcluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*Stone v. Powell,* 428 U.S. 465, 539–40, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067 (1976) (White, J., dissenting).

I believe that the purposes and goals of the exclusionary rule are not fulfilled when a confession is obtained in accordance with the requirements of the Constitution and in the absence of any police misconduct or coercion. In effect, I believe excluding defendant's confession only impedes the truth-finding function of the criminal trial and that "suppressing [defendant's] statements would serve absolutely no purpose in enforcing constitutional guarantees." *Connelly,* 479 U.S. at 166, 107 S.Ct. at 521.

Accordingly, I respectfully dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.