696 S.E.2d 608

**The STATE, Respondent,**

v.

**Santiago RIOS, a/k/a Santiago Pasqual, Appellant.**

**No. 4710.**

Court of Appeals of South Carolina.

Heard May 19, 2010.
Decided July 14, 2010.

336

Ricky Keith Harris, of Spartanburg, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

LOCKEMY, J.

Santiago Rios appeals his conviction for murder, arguing the trial court erred in (1) denying his request to suppress two statements he made to investigators because he did not knowingly and intelligently waive his Miranda[1] rights and (2) failing to charge the jury on involuntary manslaughter and self-defense. We affirm.

## FACTS

Rios was indicted for murder in Spartanburg County. The State alleged Rios shot and killed his wife, Eliza Hernandez, in

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

their home on November 23, 2006. The night of the shooting, Rios told a responding police officer three black male intruders robbed their home and shot Hernandez. Later that evening, investigators questioned Rios at the Spartanburg County Sheriff's Department (the Department). Initially, Rios maintained that intruders shot Hernandez. However, Rios later changed his story and told investigators he and Hernandez got into an argument that led to a physical confrontation and a struggle between them for the gun. According to Rios, the physical altercation started when he shoved Hernandez after she refused to fix him Thanksgiving dinner. Rios told investigators Hernandez then pulled his hair and the medallion around his neck. Rios stated he followed Hernandez into their bedroom, where she grabbed a gun and pointed it at him. Rios told investigators the two struggled with the gun and it fired. Rios claimed he was defending himself when the gun fired. Tests revealed no gunshot residue on either Rios's or Hernandez's hands, and the gun was never located.

At a pre-trial *Jackson v. Denno*[2] hearing, defense counsel argued Rios's statements to investigators were not knowingly and intelligently given. Defense counsel asserted Rios, a native of Mexico, did not have the capacity to waive his *Miranda* rights because his native language was Tarascan, and he was given *Miranda* warnings in Spanish. According to defense counsel, there is no right to remain silent in Tarascan culture and no translation for the terms "court" or "judge." The State noted Rios had lived in the United States for ten years and argued Rios was able to communicate in English and Spanish. After hearing testimony, the trial court found Rios's statements to investigators were freely, voluntarily, and knowingly given. Following trial, a jury found Rios guilty of murder, and he was sentenced to thirty years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, this court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

---

2. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

"On review, this [c]ourt is limited to determining whether the circuit court abused its discretion." *State v. Simmons*, 384 S.C. 145, 158, 682 S.E.2d 19, 26 (Ct.App.2009). "This [c]ourt does not reevaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the circuit court's ruling is supported by any evidence." *Id.*

## LAW/ANALYSIS

### I. *Miranda* Warnings

Rios argues the trial court erred in denying his motion to suppress the statements he made to Sergeant George Balderama and Officer Angel Diaz the night of the shooting. Specifically, Rios maintains he did not knowingly and intelligently waive his *Miranda* rights. We disagree.

At the *Jackson v. Denno* hearing, Sergeant Balderama, a Spanish interpreter for the Department, testified he utilized two forms for the purpose of informing Rios of his *Miranda* rights. First, Sergeant Balderama advised Rios of his *Miranda* rights in Spanish by reading the rights from a card printed in Spanish. Sergeant Balderama testified Rios acknowledged that he read or understood each right by initialing the card next to each enumerated right. Sergeant Balderama also presented Rios with a pre-interrogation waiver form with his *Miranda* rights printed in English. According to Sergeant Balderama, he asked Rios if he understood his *Miranda* rights, and Rios said "yes."

After Rios was advised of his rights, he provided an oral statement to Sergeant Balderama and Investigator William Gary in Spanish, and Sergeant Balderama transcribed the statement in English. Rios told the investigators Hernandez was shot by masked intruders. Sergeant Balderama testified he read Rios's statement back to him in Spanish and Rios signed the statement. Sergeant Balderama testified he never threatened Rios or coerced him into giving a statement. According to Sergeant Balderama, Rios spoke to him in Spanish and never used another dialect or language. Sergeant Balderama testified he had no trouble communicating with Rios in Spanish and never felt Rios had trouble understanding him. Later that night, Rios gave a second statement to Officer Diaz, another Spanish interpreter for the Depart-

ment. Rios told Officer Diaz he and Hernandez got into an argument and were struggling over the gun when it fired. Officer Diaz transcribed Rios's statement in English and then read it back to him in Spanish. Rios was given the opportunity to make changes, additions, or deletions to his statement. Officer Diaz also testified he did not have any difficulty communicating with Rios in Spanish.

At the hearing, Rios relied on *People v. Jiminez*, 863 P.2d 981 (Colo.1993), to support his argument that his waiver of his *Miranda* rights was not knowing and intelligent. In *Jiminez*, the Colorado Supreme Court upheld the lower court's suppression of Jiminez's confession on the grounds that Jiminez's waiver of his *Miranda* rights was not knowing and intelligent. 863 P.2d at 985. Jiminez functioned at the level of a six year old, had never been to school, and had a very limited vocabulary even in his native language, Kickapoo. *Id.* at 982. Because a Kickapoo translator was not available, Jiminez selected Spanish for the interrogation. *Id.* The Colorado Supreme Court affirmed the lower court's suppression of Jiminez's confession on the grounds that his mental disability rendered him incapable of understanding his rights, and not on the grounds that he was culturally unable to understand his rights. *Id.* at 985. Here, the trial court distinguished the present case from *Jiminez* and determined Rios's statements were freely, voluntarily, and knowingly given. The trial court noted Rios presented no testimony concerning his mental capacity or ability. Furthermore, the trial court found the State presented evidence Rios communicated fluently in Spanish and in English while on the job, and noted Rios presented no evidence he had a limited vocabulary in any of the languages he spoke.

On appeal, Rios argues his initials on each of the enumerated rights on the *Miranda* card may constitute an acknowledgement that he was read the rights, but do not indicate he fully understood his rights and his waiver of those rights. Specifically, Rios asserts language and cultural barriers prevented him from fully understanding his rights. Rios claims he has a limited education and Tarascan does not include words for concepts such as "rights" and "courts." Rios contends the Spanish interpretation of *Miranda* was insufficient

340

We find the trial court did not abuse its discretion in admitting the statements Rios made to Sergeant Balderama and Officer Diaz. Evidence in the record indicates Rios knowingly and intelligently waived his right to remain silent. *See State v. Peake*, 291 S.C. 138, 139, 352 S.E.2d 487, 488 (1987) ("The test for determining the admissibility of a statement is whether it was knowingly, intelligently, and voluntarily given under the totality of the circumstances."). While Rios argues his understanding of his waiver was limited because of language and cultural barriers, evidence in the record reflects Rios did not have trouble communicating in Spanish or understanding his rights. Sergeant Balderama and Officer Diaz both testified they had no trouble communicating with Rios in Spanish. Furthermore, Sergeant Balderama testified he specifically asked Rios if he understood his *Miranda* rights and he said "yes." Moreover, Robert Reeder, the trainer and safety director at the Milliken Cotton Blossom plant where Rios worked, testified Rios completed forty hours of training in English and was able to communicate in both English and Spanish. Rios had also lived in the United States for ten years at the time of his arrest. Accordingly, we affirm the trial court's decision to admit Rios's statements.

## II. Jury Charges

Rios also argues the trial court erred in failing to charge the jury on involuntary manslaughter and self-defense. Specifically, Rios contends he was entitled to an involuntary manslaughter charge because he presented evidence he and Hernandez struggled over the gun. Rios also maintains he was entitled to a self-defense charge based on his statement to investigators that he was defending himself at the time of the shooting. In response, the State contends Rios abandoned his requests to charge involuntary manslaughter and self-defense when he withdrew the requests during the charge conference. We find this issue is not preserved for our review.

During the charge conference, Rios asked the trial court to charge the jury on accident, self-defense, voluntary manslaughter, and involuntary manslaughter. The State asserted

Rios was entitled to an accident charge, but not self-defense, voluntary manslaughter, or involuntary manslaughter charges. In response, Rios withdrew his request for a voluntary manslaughter charge. Subsequently, the trial court stated it was inclined to charge voluntary manslaughter, but was not inclined to charge involuntary manslaughter because it involved recklessness. Rios asserted recklessness could have been present, but conceded "I certainly know this Court has more wisdom on the subject than I do." Rios also argued he was entitled to a self-defense charge because he told investigators he was acting in self-defense. The trial court stated that Rios's own characterization of his actions as self-defense was not binding on the court. Thereafter, the trial court noted Rios's statements indicated either intruders were responsible for the shooting or Rios shoved Hernandez first. The trial court also noted Rios presented no evidence Hernandez was the primary aggressor. Rios admitted he could not provide the court with any evidence that he did not push Hernandez first or that he and Hernandez were not involved in mutual combat.

The trial court then stated it did not mind charging accident or voluntary manslaughter, but that it did not "see self-defense in here." At that point, Rios asked for a 30–second break to confer with his co-counsel. Thereafter, Rios asked the trial court to charge voluntary manslaughter, accident, and murder. The trial court agreed to the proposed charges, and neither the State nor Rios objected. Later, after charging the jury, the trial court asked if there were any objections to the charges given. Neither the State nor Rios had any objections.

We find Rios's argument is not properly before us for review because he abandoned his request for jury charges on involuntary manslaughter and self-defense when he acquiesced and asked the trial court to charge voluntary manslaughter, accident, and murder. Therefore, Rios waived appellate review of this issue because an issue conceded in the trial court cannot be argued on appeal. *See, e.g., State v. Jackson,* 364 S.C. 329, 336, 613 S.E.2d 374, 377 (2005) (appellant waived any argument he had when he acquiesced the next morning and stated he would ask witness if he had administered a polygraph and "leave it at that"); *State v. Mitchell,* 330 S.C. 189, 195, 498 S.E.2d 642, 645 (1998) (holding that when an appel-

342

lant acquiesces to the trial court's limitation of cross-examination, he cannot complain on appeal); *Ex parte McMillan,* 319 S.C. 331, 335, 461 S.E.2d 43, 45 (1995) (a party cannot acquiesce to an issue at trial and then complain on appeal).

Rios also failed to make a contemporaneous objection to the jury charges. *See State v. Johnson,* 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005) (holding a contemporaneous objection must be made to preserve an issue for appellate review). Rios did not object at any point to the trial court's decision not to charge involuntary manslaughter and self-defense. Even after the trial court specifically asked if there were any objections to the charges given, Rios responded, "None." By failing to contemporaneously object to the jury charges, Rios has waived his right to allege error on appeal. Thus, we affirm the trial court's decision not to charge the jury on involuntary manslaughter and self-defense.

## CONCLUSION

Accordingly, the decision of the trial court is

**AFFIRMED.**

KONDUROS and GEATHERS, JJ., concur.