**Santiago RIOS, Petitioner-Appellant,**

v.

**WARDEN, PERRY CORR INST,**
**Respondent-Appellee.**

No. 16-6389

United States Court of Appeals,
Fourth Circuit.

Argued: September 12, 2017

Decided: October 20, 2017

ARGUED: Stephen K. Wirth, ARNOLD & PORTER KAYE SCHOLER LLP,

Washington, D.C., for Appellant. Caroline M. Scrantom, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee. ON BRIEF: Alan Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.

Before THACKER and HARRIS, Circuit Judges, and Norman K. MOON, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

A jury convicted Santiago Rios of murdering his wife, Eliza Hernandez, on Thanksgiving night in 2006. Now serving a 30-year prison sentence in South Carolina, Rios appeals from a district court order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Rios's claim is that his trial counsel provided ineffective assistance by abandoning a request for a jury instruction on self-defense. South Carolina's post-conviction relief court rejected that claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), holding that Rios was not prejudiced by counsel's actions because a self-defense instruction was not reasonably likely to result in a different outcome at trial. The district court also denied relief, and for the reasons below, we affirm.

## I.

### A.

At Rios's 2008 trial for the murder of his wife, the prosecution focused the jury's attention on two starkly different accounts of how Hernandez died—both given by Rios. When first questioned on the night of the killing, Rios told the police that he and Hernandez were watching television when three masked intruders forced their way into the house, attacked him, and shot his wife. But Rios changed course in a second statement later that night, describing an altercation between himself and his wife—in which he was the first physical aggressor—that culminated in a struggle over a gun and an accidental shooting.[1]

According to this second version of events, the physical altercation started when Rios shoved his wife after she refused to serve him Thanksgiving dinner and instead insisted that he finish his uneaten lunch. *See State v. Rios*, 388 S.C. 335, 696 S.E.2d 608, 609 (2010); J.A. 436 ("[Hernandez] said I'm, I'm going to eat my old lunch. I shoved her and she pushed, and she pulled my hair and also pulled my medallion."). Then, according to Rios, he followed Hernandez into the couple's bedroom, where Hernandez hit him, threatened to leave him, and finally pointed a gun at him. The two struggled with the gun, Hernandez with her finger on the trigger, and "a shot was fired." J.A. 437. Rios claimed that he was "defending [him]self" during the struggle and when the gun was fired. *Id.* (adding, "[i]t was in self-defense"). No gun was found at the scene or ever recovered.

At the close of evidence and during the charge conference, Rios's counsel request-

---

1. Rios did not testify at trial, but the government introduced both his statements into evidence.

ed that the jury be instructed not only on accident but also on self-defense, pointing to Rios's references to "defending [him-]self" and "self-defense" in his second statement. The state opposed a self-defense instruction, arguing that Rios's "colloquial" use of the phrase was not enough to establish the elements of self-defense. J.A. 626. And because Rios had not admitted to killing Hernandez, the state maintained, he could not satisfy the legal definition of self-defense and was not entitled to an instruction. The court, for its part, expressed skepticism about a self-defense instruction on an additional ground: Under South Carolina law, a defendant is not entitled to a self-defense instruction unless there is evidence that shows he is without fault in bringing about an altercation, and Rios's own statement cast him as the initial aggressor or at least a "mutual" participant. J.A. 633 ("I don't have any evidence that indicates that [Hernandez] was the primary aggressor against him or that he was not, they weren't participating in mutual combat, which, again, is an exclusion to … self-defense.").

Defense counsel's response—the heart of Rios's present claim—was to concede that he could not provide the court with evidence that Rios was not the first physical aggressor, request a 30-second break to confer with co-counsel, and then abandon the request for a self-defense instruction. Instead, Rios's counsel asked the court to charge the jury on accident and voluntary manslaughter, in addition to murder. The state did not object, and the court agreed.

Closing arguments followed. Consistent with Rios's second statement to the police and the outcome of the charge conference, defense counsel argued to the jury that Hernandez's death was "a terrible accident." J.A. 642. Tracking Rios's statement, counsel described Rios as acting "in his own defense" as he struggled with Hernandez over the gun. J.A. 641. And previewing the charges already agreed upon, Rios's counsel explained to the jury that it would be instructed on the law of murder, accident, and voluntary manslaughter. The state, in its closing, argued for a murder verdict, characterizing the shooting as "not self-defense or an accident or a suicide," but "simply an execution." J.A. 663. Returning repeatedly to Rios's shifting accounts of the night in question, the state urged the jury not to credit Rios's ultimate claim that the shooting was an accident. It also argued that Rios's version of events was inconsistent with the physical evidence and with the failure to recover a gun at the scene of the shooting. The jury deliberated for less than two hours before finding Rios guilty of murder, and the court sentenced him to 30 years in prison.

### B.

On direct appeal, Rios argued that the trial court erred in failing to instruct the jury on self-defense. The state appellate court rejected that claim on the ground that Rios had waived appellate review of the issue. Trial counsel "abandoned his request" for a jury charge on self-defense at the charge conference, the appellate court determined, "when he acquiesced and asked the trial court to charge voluntary manslaughter, accident, and murder[,]" and "an issue conceded in the trial court cannot be argued on appeal." *Rios*, 696 S.E.2d at 612. The court separately noted counsel's subsequent failure to object to the instructions given to the jury— even after the trial court specifically asked whether there were objections—which also had the effect of waiving the right to appellate review. *Id.*

Rios then sought post-conviction relief, arguing in part that his trial counsel provided ineffective assistance when he aban-

doned the request for a self-defense instruction. At a hearing on the motion, Rios's trial attorneys testified that the accident theory was the heart of their defense, and that they were "most concerned" that the court instruct the jury on accident, rather than self-defense. J.A. 766. But one attorney also testified that the record contained evidence responsive to the trial court's concerns about a self-defense charge that had not been presented to that court during the charge conference: Specifically, Rios's mother testified that it was Hernandez who pushed Rios first, rather than—as in Rios's own statement—Rios who first shoved Hernandez.

The PCR court rejected Rios's ineffective assistance claim under the two-part standard articulated by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under *Strickland*, a petitioner must show both deficient performance by counsel and prejudice to the defense, meaning a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." J.A. 831 (citation omitted). The PCR court believed that Rios could show deficient performance under the first prong of *Strickland*, given counsel's "fail[ure] to articulate to the trial judge when he was originally arguing for a self-defense jury charge [evidence] relate[d] to who pushed first in the argument that evening." J.A. 834; *see also* J.A. 858, 860. But the PCR court determined that Rios could not satisfy *Strickland*'s prejudice prong by showing a reasonable likelihood that the outcome of his trial would have been different had counsel not abandoned his request and a self-defense charge been given, both because of the insubstantial nature of the evidence supporting self-defense and because Rios lacked credibility as a result of his changing stories. The Supreme Court of South Carolina denied Rios's petition for certiorari.

Rios then filed a habeas petition in federal court under 28 U.S.C. § 2254, raising the same ineffective assistance claim. A magistrate judge recommended denying the petition, finding, like the PCR court, that Rios could not show the necessary *Strickland* prejudice. The magistrate judge's reasoning, however, differed from that of the PCR court. Citing a case from the Eleventh Circuit, *Davis v. Secretary for Department of Corrections*, 341 F.3d 1310, 1316 (11th Cir. 2003), the magistrate judge concluded that when deficient performance consists of the failure to preserve an issue for appeal, the appropriate prejudice inquiry is whether, but for counsel's failure, there is a reasonable likelihood that the result of the *appeal*, rather than the trial, would have been different. But even under that more lenient standard, the magistrate judge found, Rios could not prevail: Because Rios's own statement indicated that he was the first to initiate physical contact, and also because he did not admit to firing the gun to defend himself, there was no reasonable likelihood that an appellate court would reverse Rios's conviction for failure to instruct on self-defense.

The district court adopted the report and recommendation of the magistrate judge. The district court noted that our circuit continues to apply the "traditional prejudice standard outlined in *Washington v. Strickland*"—asking whether there is a reasonable likelihood of a different outcome at *trial*—rather than the *Davis* standard employed by the magistrate judge. J.A. 920 n.3. The court also noted that the Eleventh Circuit itself has called *Davis* into some question. But the court found it unnecessary to resolve the issue, agreeing with the magistrate judge that Rios could not show prejudice even under a different-

outcome-on-appeal standard, and denying Rios's petition on that ground alone.

This timely appeal followed.

## II.

We review the district court's denial of a habeas petition de novo. *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Our analysis is circumscribed, however, by the amendments to 28 U.S.C. § 2254 enacted in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, we may not grant relief on a claim adjudicated on the merits in a state court proceeding unless, as relevant here, the state court's determination is "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] Here, as the parties agree, the relevant adjudication is that of the state PCR court denying Rios's ineffective assistance claim on the merits, not the state supreme court's non-merits denial of discretionary review. *See State v. Rucker*, 321 S.C. 552, 471 S.E.2d 145, 145 (S.C. 1996) (denial of a petition for a writ of certiorari "does not dismiss or decide the underlying appeal"). Thus, § 2254 relief is barred unless the PCR court applied a legal standard that is contrary to federal law as "clearly established in the holdings of [the Supreme] Court," *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011), or, having "identifie[d] the correct governing legal principle," applied that principle to the facts of the case in a way that is "objectively unreasonable," *Wiggins v. Smith*, 539 U.S. 510, 520, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation and internal quotation marks omitted).

Indeed, the scope of our inquiry in this case is narrower still, in that Rios is entitled to relief only if the PCR court's *prejudice* determination is contrary to or unreasonably applied Supreme Court precedent. As the PCR court explained, to prevail under *Strickland*, a petitioner must show both that his lawyer's performance was constitutionally deficient and also that this deficiency prejudiced the defense. *Strickland*, 466 U.S. at 690, 694, 104 S.Ct. 2052. An insufficient showing under either prong ends the inquiry, and if the PCR court's prejudice holding withstands the deferential review mandated by § 2254(d)(1), then there is no need to reach *Strickland*'s deficiency prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

We conclude that the PCR court's prejudice holding—that Rios cannot show a reasonable likelihood that the outcome of his trial would have been different had defense counsel pressed for a self-defense instruction and such an instruction been given—falls well within the parameters of § 2254(d)(1). First, the state court's analysis is not contrary to any federal law "clearly established" in Supreme Court holdings. *See* 28 U.S.C. § 2254(d)(1); *Harrington*, 131 S.Ct. at 785. On the contrary: The PCR court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions," *Wiggins*, 539 U.S. at 520, 123 S.Ct. 2527 (citation omitted), when it applied the well-established, two-prong *Strickland* standard—including *Strickland*'s instruction that when, as here, a petitioner challenges a conviction,

---

**2.** AEDPA also allows for federal habeas relief when a state court decision rests on "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Rios does not contend that the state PCR court relied on any unreasonable factual findings, so we do not address this provision further.

prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt," leading to a different outcome at trial. *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052.

As noted above, the magistrate judge, relying on the Eleventh Circuit's decision in *Davis*, applied a different standard under *Strickland*'s prejudice prong: When an alleged deficient performance consists of the failure to preserve an error for appeal, the magistrate judge concluded, the proper inquiry is into the likelihood of a different outcome on *appeal* had appellate review not been waived. *See Davis*, 341 F.3d at 1316 ("[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved."). In the posture of this case, however, we are not at liberty to consider or apply a new modification of what the district court aptly termed the "traditional prejudice standard outlined in [ ] *Strickland*." J.A. 920 n.3. The only question under AEDPA is whether the different-outcome-at-trial standard employed by the PCR court is contrary to "clearly established [f]ederal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and whatever the merits of the Eleventh Circuit's approach in *Davis*, that single circuit court decision does not constitute "clearly established [f]ederal law" under § 2254(d)(1). As the

Supreme Court has made clear, a state court does not contravene or misapply "clearly established" law by "declin[ing] to apply a specific legal rule"—like *Davis*'s different-outcome-on-appeal standard— "that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009).[3]

Effectively conceding the point, Rios does not argue on appeal that the PCR court erred by failing to follow *Davis*. Instead, Rios's position is that the PCR court's determination that he could not show a reasonable likelihood of a different outcome at *trial* was an "unreasonable application" of *Strickland* under § 2254(d)(1). We cannot agree. The PCR court rested in part on an evaluation of the record evidence in support of self-defense, finding that it was not sufficient to give rise to a reasonable likelihood that a self-defense instruction would have led to a different verdict. Particularly in light of Rios's own statement, introduced by the government at trial, indicating that Rios was the first physical aggressor in his altercation with his wife—which, if accepted by the jury, would preclude a finding of self-defense— the PCR court's assessment was not "objectively unreasonable." *Wiggins*, 539 U.S. at 521, 123 S.Ct. 2527 (citation omitted). Nor was it "unreasonable" for the PCR court to conclude that it was especially unlikely that a self-defense instruction would have led to an acquittal in light of Rios's damaged credibility, arising from his shifting and starkly divergent accounts

3. Accordingly, we also need not consider whether the magistrate judge was correct in assuming that the narrow rule crafted by *Davis* would apply to this case at all, given that Rios's ineffective assistance claim focuses on counsel's failure to press for a self-defense instruction at *trial* at least as much as counsel's failure to preserve the issue for appeal.

*See Rios*, 696 S.E.2d at 612 (separately addressing counsel's abandonment of the self-defense charge at trial and counsel's failure to object and preserve the question for appeal); *cf. Davis*, 341 F.3d at 1315–16 (distinguishing "simple failure" to preserve an issue for appeal from failure to press a claim at trial).

of what happened on the night of Hernandez's death.

Under § 2254(d)(1), "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Mirzayance*, 129 S.Ct. at 1420 (internal quotation marks omitted). In light of the evidence presented at trial, Rios cannot meet that "high[ ] threshold" with respect to the PCR court's prejudice determination, and for that reason, his § 2254 petition was properly denied.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*