**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Gabriel Betancourt, Jr., Appellant.

Appellate Case No. 2017-001016

———————

Appeal From Greenville County
Donald B. Hocker, Circuit Court Judge

———————

Opinion No. 2022-UP-353
Heard November 6, 2019 – Filed September 14, 2022

———————

**REVERSED AND REMANDED**

———————

William G. Yarborough, III, and Lauren Carole Hobbis, both of William G. Yarborough III, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General David A. Spencer, both of Columbia, and William Walter Wilkins, III, of Greenville, for Respondent.

———————

**PER CURIAM:** Gabriel Betancourt, Jr., appeals his convictions for criminal sexual conduct (CSC) with a minor in the first degree, CSC with a minor in the third degree, and lewd act upon a child. He argues the circuit court erred by (1)

allowing an expert witness, who was also the minor victim's (Minor) therapist, to improperly bolster Minor's testimony by describing Minor's diagnosis, symptoms, and treatment for post-traumatic stress disorder (PTSD), (2) allowing a clinical social worker to testify as a delayed disclosure expert, and (3) redacting a portion of Minor's forensic interview video in which Minor recounted prior sexual abuse by her biological father. We reverse and remand to the circuit court for a new trial.

**Facts and Procedural History**

Following a presentation to her fifth-grade class about Stranger Danger and inappropriate touching, Minor reported to a student teacher that she had been sexually assaulted by her "Dad." Minor, then ten years old, disclosed that her stepfather, Betancourt, began abusing her when she was five years old. The student teacher reported Minor's allegations to Minor's teacher and the school guidance counselor, who reported the disclosure to law enforcement.

William Amendolare of the Greenville County Sheriff's Office (GCSO) responded to the school and took statements from the guidance counselor and teachers. Pursuant to GCSO protocol, Amendolare notified his supervisor, David Picone, who investigated Minor's allegations. While at her school, Investigator Picone and his partner met with Minor, the school guidance counselor, and a DSS caseworker. Minor was then referred to the Julie Valentine Center for a forensic interview.[1]

Investigator Picone spoke with Minor's mother (Mother) and testified Mother was "very shocked" and "extremely mad" to learn of Minor's allegations against Betancourt. Picone told Mother GCSO was referring Minor for a forensic interview and advised her not to discuss the allegations with Minor because "for an interview, we want them [children] to, you know, the information they provide to come from their mouth and not be given by the parents."

Licensed professional counselor Robin Smith conducted Minor's forensic interview while Investigator Picone observed from a monitor in another room. In the interview, Minor described a red dress belonging to Mother that Betancourt had Minor wear. Officers searching the home recovered a red dress from Minor's room; however, neither Minor nor Betancourt's DNA was found on the dress. During law enforcement's search of the home, Mother located several CDs

---

[1] The Julie Valentine Center is a sexual assault and child abuse recovery center in Greenville County.

containing pornography, along with Betancourt's social security card from the sleeve of one of the CDs.

A Greenville County grand jury indicted Betancourt on three counts of first-degree CSC with a minor, one count of third-degree CSC with a minor, one count of lewd act on a minor, and one count of disseminating pornographic material to a minor.

At Betancourt's trial, Minor testified Betancourt began inappropriately touching her when she was five or six years old and the abuse stopped when she was ten. Minor stated Betancourt abused her while Mother was at work and during the time Mother was in jail. Minor reported Betancourt performed oral sex on her, penetrated her anally and vaginally with his fingers, forced her to perform oral sex, and showed her pornography.

Minor identified a picture of the red dress as Mother's Halloween costume and testified Betancourt forced her to wear it with nothing underneath. According to Minor, Betancourt hit her once—knocking out her tooth—when she wore shorts under the red dress. Minor stated Betancourt and Mother's room did not have a doorknob, and Betancourt told her to look through the hole while he and Mother had sex. Minor delayed disclosing the abuse because Betancourt warned her not to tell and threatened to lock her in her room.

Mother testified she and Betancourt dated for five or six months before they moved in together; Minor was about two years old at this time. When Minor was five years old, Betancourt began babysitting her while Mother worked. Mother admitted she was arrested on September 29, 2009, and she remained in jail until October 18, 2009. During this time, Betancourt took care of Minor, and there were no other adults in the home. Mother and Betancourt were together for eight years, and he claimed he wanted to raise her children as his own.

Mother was "hurt and angry" when she heard Minor's allegations against Betancourt. On the day of Minor's disclosure, Mother took Minor home and went next door to inform Betancourt's mother and sisters of the allegations against him. Betancourt's mother evicted Mother and her children from their home after Minor disclosed the abuse. The children went to live with their paternal grandfather, while Mother "lived on the streets" and did not see her children for six months. DSS removed the children from Mother's custody during this time, but the children have since been returned to her care.

Mother claimed that when Betancourt returned to the home to get his belongings, she "asked him 'did you do it?' And he started crying and he said yes."  Mother testified she bought the red dress as a Halloween costume but never wore it because it was too small; she kept it hoping she would eventually lose weight and be able to wear it.  Mother denied watching pornography in the home and stated she was unaware Betancourt had pornography in the house; however, she retrieved the pornography from the top of a closet during Investigator Picone's search.

Mother testified as to her diagnoses of treatment-resistant schizophrenia and bipolar disorder and admitted she told Minor that she, too, could potentially be schizophrenic or bipolar.  Mother's sister lived with the family in November 2014, but Mother evicted her after Sister attempted suicide in January 2015.  Minor was present during Sister's suicide attempt.  Mother admitted she spoke with Minor prior to Minor's forensic interview—despite Investigator Picone's admonition not to—and she reported what Minor told her to Picone.

Dr. Mary Fran Croswell testified Mother told her Minor was diagnosed with bipolar disorder and "mild schizophrenia"; however, nothing in Croswell's treatment of Minor indicated Minor was schizophrenic or bipolar.  Minor's therapist, Erica Van Wagner, also testified Minor's medical records reflected no diagnosis of schizophrenia or bipolar disorder.

Betancourt denied sexually abusing Minor.  He testified Mother knew he had pornography in the home because they watched it together.  He admitted he cried when Mother confronted him about allegedly abusing Minor, but he denied that he ever admitted to any abuse.  He alleged that when Mother spent eighteen days in jail in 2009, Mother's brother and his girlfriend stayed with him to help with the children; others helped him with child care and taking care of the house while Mother was in jail.  Betancourt denied ever having seen the red dress found during the search.  Moreover, he testified he did not keep his social security card with the pornography, where Mother retrieved it, but stored it with the titles to his vehicles.

Betancourt was convicted of two counts of first-degree CSC with a minor, one count of third-degree CSC with a minor, and one count of lewd act on a child.  The jury acquitted Betancourt of one count of first-degree CSC with a minor and one count of disseminating obscene material to a minor.  The circuit court sentenced him to an aggregate sentence of forty-five years' imprisonment.

**Standard of Review**

"The admissibility of an expert's testimony is a matter within the trial court's sound discretion and the determination will not be reversed on appeal absent an abuse of discretion." *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018). "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015).

**Law and Analysis**

**I. Treating Therapist's Testimony**

The circuit court qualified Van Wagner as an expert in the "treatment of children where there's a concern of sexual abuse and children experiencing trauma." Although Betancourt did not object to Van Wagner's qualification in this area of expertise, he objected to the content of her testimony addressing Minor's symptoms and treatment, specifically that she was testifying as to "not just PTSD of any kind of trauma generally but sexual trauma specifically." Betancourt filed an objection pretrial and objected during Van Wagner's testimony, arguing she indirectly vouched for Minor's credibility by implying she believed Minor was telling the truth about the sexual abuse allegations.

Van Wagner testified she saw Minor due the multidisciplinary team's concern that Minor was "suicidal or having a pretty extreme reaction after having made her disclosure." She treated Minor through trauma focused cognitive behavioral therapy, which she defined as "an evidence based treatment that is used for children ages three to seventeen who present with signs or symptoms of PTSD that have history of trauma. And it is a series of interventions that work to decrease stress or the stress related to an experience of trauma." Van Wagner also defined "trauma" and noted Minor experienced symptoms common in PTSD victims, including flashbacks, intrusive thoughts, avoidance symptoms, nightmares, and trouble sleeping. Although Van Wagner initially testified a goal of Minor's treatment was to help her forget what happened, following Betancourt's motion for a mistrial, the circuit court struck this portion of her testimony and instructed the jury to disregard it.

We find Van Wagner's testimony here exceeded that of the witness in *State v. Makins*, 433 S.C. 494, 505, 860 S.E.2d 666, 672 (2021). There, our supreme court found the minor's therapist, Rich, did not improperly bolster the minor's testimony by simply affirming she provided therapy to the child after her traumatic experience. The court noted:

Rich never testified she advised Minor about the importance of being truthful, never testified directly as to Minor's truthfulness, and never opined Minor's behavior indicated truthfulness. While Rich was allowed to confirm she treated Minor, she was not allowed to explain why she was treating Minor, detail her treatment of Minor, or testify as to her diagnosis of Minor. Rich only addressed the circumstances of Minor's disclosure of abuse and the drawing Minor produced in therapy.

433 S.C. at 503, 860 S.E.2d at 671.

Like Rich, Van Wagner did not testify she believed Minor, nor did she testify that she told Minor to be truthful. However, her testimony defining trauma focused cognitive behavioral therapy as "evidence based," her discussion of Minor's symptoms, her reasons for treating Minor, and her specific diagnosis of PTSD in the context of Minor's sexual abuse overstepped the guidance provided in *Makins*.[2] This, when considered in conjunction with the error discussed in Section II, *infra*, requires reversal.

## II. Exclusion of Allegation of Sexual Abuse against Father

Betancourt further argues the circuit court erred in excluding a portion of Minor's forensic interview in which she discussed an allegation of sexual abuse against her biological father (Father). In the interview, Minor explained she was there to talk about "what my father did to me." The forensic interviewer asked who her father was, and Minor responded, "Gabriel"—the defendant, who is her stepfather. When the forensic interviewer asked Minor if anyone else had been inappropriate with her, she disclosed Father touched her inappropriately when she was one or two years old. The forensic interviewer questioned Minor further, asking, "Is that something you know happened or something you heard somebody talk about?" In response, Minor claimed she remembered Father sticking his finger somewhere when he was changing her diaper or giving her a bath. She admitted Mother told her Father did "really wrong stuff" to her.

During pretrial motions, the parties discussed the portions of the forensic interview video they sought to redact. The State argued Minor's allegations of sexual abuse

---

[2] We note neither the circuit court nor the parties had the benefit of the supreme court's *Makins* opinion at trial and argument before this court.

against Father should be redacted under *State v. Boiter*, 302 S.C. 381, 383, 396 S.E.2d 364, 365 (1990), in which our supreme recognized "[e]vidence of prior false accusations by a complainant may be probative on the issue of credibility." *Boiter* requires:

> [I]n deciding admissibility of evidence of a victim's prior accusation, the trial judge should first determine whether such accusation was false.  If the prior allegation was false, the next consideration becomes remoteness in time.  Finally, the trial court shall consider the factual similarity between prior and present allegations to determine relevancy.

*Id.* at 383–84, 396 S.E.2d at 365.

The circuit court asked how Minor could possibly remember alleged abuse that she claimed occurred when she was one or two years old.   In response, the State argued *Boiter* required Betancourt to prove the falsity of the allegation.

Betancourt argued Minor made the allegation against Father based on information Mother told her and noted,

> The reason we intend to offer that is to show her memory and capacity for recall.  This is likely something she's been told.  But in that interview, she very distinctly describes a memory.  And in fact, she says, 'I can remember looking down and seeing his hand go into my diaper.  And he was giving me a bath'"  To me, this is a memory that has almost been created in her mind.

Betancourt summarized that he sought to offer the testimony to challenge Minor's credibility, memory, and capacity to recall, noting her description of a specific memory in the video.  Betancourt clarified, "It's not that 'she's a liar because she's lied before.'  It's more that this child may have issues with her memory and recall and capacity to understand things that happened at the age of one."   The defense contended that under *Boiter*, the court should consider when the allegation was made, not only when the abuse was alleged to have occurred, and noted the significance of Minor's "essentially simultaneous" allegation against Father during the forensic interview regarding abuse she attributed to Betancourt.  The similarity

existed because Minor was alleging abuse by both Father and her "father figure," Betancourt.

The State questioned whether, based on the circuit court's ruling, the video could be redacted because Mother "is not going to say, 'I told Minor she was sexually assaulted.' She's going to say, 'I didn't like the way that Troy [Father] changed her diaper' and the child must have inferred that. You know, it just gets confusing." The circuit court replied:

> Well, I think one of the primary reasons why I wanted that portion redacted because she was one year old and I think it's pretty much [since] a one-year-old's not going to remember. Or a ten-year-old's not going to remember what happened to them as a one-year-old.
>
> Therefore, she based her statement, her accusation against the dad based upon what mom told her. So that was, you know, under the *Boiter* case, I think that was, in my mind, a proper ruling to redact that portion of the forensic interview.
>
> ….
>
> MR. SARRATT: So just to make sure I understand that. Basically, I can ask about this whole information going to Minor, I just can't talk about Minor—
>
> THE COURT: Right. Because it's—the victim or the alleged victim is making the accusation. And that's different from you trying to support your theory of the case, that there may have been some knowledge that Minor may have had to perpetrating whatever fabrication that may have been.

In granting the State's request to redact the forensic interview video, the circuit court further stated:

> While it, you know, may very well be false, you know, I think remoteness—I think you have to look at when the

activity allegedly occurred as opposed to when it was recorded; as you argued, Mr. Sarratt.

And we've got a one-year-old versus a five to ten years old. And I think the remoteness—and I think that there's not a sufficient factor similarity to get it in. So under the *Boiter* case, I'm going to order that it be redacted, okay?

Because prior false allegations of sexual abuse are highly probative of a victim's credibility, we find the circuit court erred in requiring redaction of the portions of the forensic interview video concerning Minor's allegation of Father's sexual abuse, which the circuit court recognized was likely false. The reason the circuit court ordered the redaction—because a ten-year old would not be able to recall an incident that allegedly occurred when she was one or two years old—is the very reason Betancourt sought admission. In Betancourt's view, the proper analysis turned not only on the age of the victim when she recounted the prior abuse to the forensic interviewer, but also required consideration of when the conduct itself allegedly occurred. Whether the prior conduct alleged was something the victim could possibly remember—as opposed to an event conveyed to her by an adult perhaps engaged in coaching—was important to this analysis.[3]

This error was not harmless because the State's case turned on Minor's credibility, as impacted by the influence of Minor's mentally ill mother. *See State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94–95 (2011) ("The only evidence presented by the State was the children's accounts of what occurred and other hearsay evidence of the children's accounts. Because the children's credibility was the most critical determination of this case, we find the admission of the [forensic interviewer's] written reports was not harmless.").

Betancourt was able to cross-examine Mother about the allegation against Father, however, the circuit court limited this cross-examination, ruling Betancourt could question Mother only about what she told Minor about Mother's relationship with

---

[3] Other instances of possible coaching arose in Minor's forensic interview. For example, when Smith brought out the anatomical dolls, Minor stated "Oh, my mom told me this was going to happen." And, near the beginning of the interview when Minor discussed the red dress, she commented, "Oh, somebody's going to bring it."

Father and the sexual abuse Mother suffered as a child. The circuit court explained:

> I think it's pretty clear it would be prejudicial error for the Defense to be hamstrung and not be allowed to cross-examine or try to develop their theory of fabrication in this case. But the video, the reason why I redacted the video was because that is an accusation coming from the victim herself, that when I was one year old my dad, Troy [Father], did whatever. So I think that we've got two different situations here, okay?

Mother testified she told Minor she left Minor's father because she did not believe a man should change a female baby's diaper. Mother stated she felt this way because she was raped as a child. She explained,

> The way that I had said it was that, you know I didn't want you know, your father to change your diaper. I don't think it's right. I don't want something to happen. You know, because always in the back of my mind every single person that walks by has the capability to do something grotesque. It's whether or not they act on it.

Minor was two years old when Mother and Father separated.

The facts of this case are unique in that Minor claims to have remembered events she could not possibly remember, and there is evidence indicating Mother created these concerns. We recognize that proving the falsity of allegations such as these would be a difficult threshold task in most cases, and we share the circuit court's concern that Minor likely based her allegations against Father on what Mother told her. The fact that Minor claimed in the forensic interview to have an independent recollection of these incidents from such a young age calls into question the truthfulness of the remainder of her allegations, particularly when considered in conjunction with Mother's mental health issues and Mother's own admission that she told Minor her concerns about men in the context of criticizing the way Father changed Minor's diaper as an infant. As the limited cross-examination of Mother did not cure the prejudice resulting from the erroneous redaction of the forensic

interview video and the indirect bolstering in portions of Van Wagner's testimony, we reverse Betancourt's convictions and remand for a new trial.[4]

**REVERSED AND REMANDED.**

**WILLIAMS, C.J., MCDONALD, J., and HUFF, A.J., concur.**

---

[4] We find unpreserved Betancourt's argument that the circuit court erred in allowing a law clerk to remain in the jury room while the jury rewatched the forensic video on a court laptop. *See State v. Rios*, 388 S.C. 335, 342, 696 S.E.2d 608, 612 (Ct. App. 2010) (recognizing "a party cannot acquiesce to an issue at trial and then complain on appeal"); *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("Issues not raised and ruled upon in the trial court will not be considered on appeal."). As our reversal on other issues is dispositive, we decline to address whether the circuit court erred in allowing Linda Hutton to testify as a blind expert in delayed disclosure. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when a prior issue was dispositive).